**TOYOTA INDUSTRIAL EQUIPMENT MFG., INC., Appellant,**

v.

**CARRUTH–DOGGETT, INC. d/b/a Toyotalift of Houston, Appellee.**

No. 01–09–00399–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 1, 2010.

Rehearing Overruled June 14, 2010.

Abigail Ann Mathews, Kurt C. Kern, Isaac Daniel Leventon, Hartline, Dacus, Barger, Dreyer & Kern, L.L.P., Dallas, TX, Kathryn F. Green, Hartline, Dacus, Barger, Dreyer & Kern, L.L.P., Corpus Christi, TX, for Appellant.

Charles W. Getman, Diane M. Guariglia, Cokinos Bosien & Young, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant Toyota Industrial Equipment Mfg., Inc. (TIEM) appeals the trial court's grant of summary judgment in favor of appellee Carruth–Doggett, Inc., d/b/a ToyotaLift of Houston (ToyotaLift) on its statutory claim for indemnity for losses arising out of a products liability suit. In two issues, TIEM argues that the trial court erred in granting summary judgment because (1) TIEM did not owe a duty to indemnify ToyotaLift for the separate negligence claim alleged against it; and (2) the attorney's fees awarded were not accrued in defending a products liability claim.

We affirm.

## Background

In April 2005, Shahzah Sunesara was injured while operating a forklift manufactured by TIEM and leased to his employer, International Rags, Ltd., by ToyotaLift. He sued International Rags in 2006.[1] On April 19, 2007, Sunesara filed his first amended petition adding TIEM and ToyotaLift as defendants. The facts in Sunesara's petition alleged that

International Rags instructed [him] to operate a forklift in order to complete a task. The forklift is further identified as Model 7FGCU24, Serial Number 75669 which was manufactured by TIEM and leased by ToyotaLift. [Sunesara] was never instructed on how to operate the forklift and/or never received any training on the safe operation of the forklift. As [he] operated the forklift, it overturned and fell on [his] leg, requiring amputation of his leg from the knee down.

Sunesara asserted that International Rags was negligent for failing to provide a safe work place and to observe job site safety, failing to properly hire, supervise, and train him to operate the forklift, "failing to warn [him] of the dangers that International Rags knew or should have known [were] associated with the forklift," providing "machinery that was unsafe, unfit and/or malfunctioning," and "failing to warn [him] that its machinery was unsafe, unfit and/or malfunctioning."

Sunesara also alleged a strict products liability claim, stating,

---

1. Sunesara's original petition does not appear in the record.

[Sunesara] would show that the forklift was placed in the stream of commerce or otherwise distributed, sold or manufactured by ToyotaLift and TIEM in a defective condition. [Sunesara] alleges that the forklift in question was defective or otherwise unsafe at the time it left the control of TIEM and ToyotaLift. The forklift was defectively manufactured and/or designed and/or marketed by TIEM and ToyotaLift. These defects rendered the forklift unreasonably dangerous in that the forklift rolled over when it should not have rolled over and such defect was a producing cause of damage to [Sunesara].... The forklift defects include but are not limited to the following:

   a.  Component parts were not present to prevent the forklift ... from rolling over;

   b.  There were no warning, instruction or advise [sic] to the operators of the forklift to verify the component parts in question were actually present;

   c.  Consumers were not properly warned of the possibility the unit could unexpectedly roll over;

   d.  Defective assembly, reassembly or maintenance of the Toyota forklift in question;

   e.  Improper testing, maintenance and/or inspection of the Toyota forklift in question, or the component parts thereof to determine the durability and function ability of the purpose for which it was intended; and

   f.  Such other and further defects that discovery may reveal.

Sunesara's first amended petition also alleged breach of implied warranty against ToyotaLift and TIEM for "distributing the defective forklift in a defective and unsafe condition," arguing that "ToyotaLift and TIEM maintained and distributed the forklift even though it was not suitable for the purposes for which it was intended."

Solely against ToyotaLift, Sunesara alleged negligence in the maintenance and inspection of the forklift, arguing that "ToyotaLift assumed responsibility for the proper operation of the forklift and agreed to maintain the forklift" pursuant to the lease agreement between ToyotaLift and International Rags. Sunesara alleged negligence against TIEM, stating that "the defects in the forklift were a direct result of" TIEM's negligence in designing, manufacturing, and marketing the forklift.

On May 11, 2007, ToyotaLift answered the suit by denying Sunesara's claims and asserting various affirmative defenses, and it filed a cross-claim demanding TIEM's defense and indemnity under Chapter 82 of the Texas Civil Practice and Remedies Code. On May 31, 2007, TIEM filed special exceptions, which, in regard to the "products liability claims as to ToyotaLift," stated,

> TIEM specially excepts to ... [Sunesara's] First Amended Original Petition in that it fails to fairly and accurately identify the claims for which [Sunesara] is suing ToyotaLift. More specifically, TIEM specially excepts that ... [Sunesara] has not pleaded viable causes of action against ToyotaLift pursuant to the Texas Civil Practice and Remedies Code § 82.003 and TIEM requests that the Court require [Sunesara] to amend his pleading to clarify his products liability claims, if any, and to plead the required elements of a products liability claim against ToyotaLift, if any there is.

ToyotaLift joined TIEM's special exceptions.

On November 7, 2007, Sunesara filed his second amended petition asserting the same facts and negligence cause of action

against International Rags.[2] However, he amended his claims for "Strict Product Liability" and "Breach of Implied Warranty" to assert causes of action only against TIEM. Sunesara left unchanged the cause of action solely against TIEM for negligence in designing, manufacturing, and marketing the forklift and solely against ToyotaLift for negligence in maintaining and inspecting the forklift. The entirety of Sunesara's claims against ToyotaLift follow Sunesara's claims for products liability and negligence against TIEM and state:

> Plaintiff would show that Defendant ToyotaLift leased the forklift in question to Defendant International Rags. Pursuant to the lease agreement, Defendant ToyotaLift assumed responsibility for the proper operation of the forklift and agreed to maintain the forklift. Defendant ToyotaLift did not properly maintain the forklift, or alternatively, Defendant ToyotaLift maintained the forklift in a negligent manner. ToyotaLift's negligent acts and/or omissions regarding the maintenance of the forklift, or lack thereof, proximately caused Plaintiff's injury. Specifically, Defendant ToyotaLift maintained the forklift in question and even inspected the forklift in question. ToyotaLift negligently performed the maintenance, inspection, and prior or subsequent repairs proximately causing harm to the Plaintiff.

> In addition, Plaintiff would show the Court that the occurrence made the basis of this suit, and the resulting injuries and damages set out below were a direct and proximate result of the negligence of ToyotaLift in one or more of the following respects, or by combination thereof:
>
>   a. Failing to use due care in the maintenance and upkeep of the Toyota forklift;
>
>   b. Failing to use or negligent use of due care to test and/or inspect Toyota forklift or the component parts in question;
>
>   c. Failing to train its employees on the proper maintenance procedures for the forklift in question; and
>
>   d. Such other and further defects and/or violations under [Civil Practice and Remedies Code] § 82.003[3] that discovery may reveal.

On January 7, 2008, ToyotaLift filed a no-evidence motion for summary judgment against Sunesara, asserting that there was no evidence to support Sunesara's negligence claim against it and that, "[t]o the extent [Sunesara] seeks recovery against ToyotaLift under a products liability theory, [he] has no evidence that he meets any of the exceptions prohibiting this claim under Chapter 82 of the Texas Civil Practice and Remedies Code." Sunesara responded to ToyotaLift by arguing that it failed to adequately inspect and maintain the forklift's System of Active Stability, which was a proximate cause of the forklift's rolling over and injuring him. Regarding any product liability claims, Sunesara's response stated,

> For the purposes of this motion and the evidence before the parties and Court,

---

2. Sunesara later settled his claims against International Rags and nonsuited them.

3. Section 82.003 of the Civil Practice and Remedies Code provides that "a seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves" one of the enumerated circumstances, which include, among others, "that the seller participated in the design of the product," "that the seller altered or modified the product," or "that the seller installed the product." TEX. CIV. PRAC. & REM.CODE ANN. § 82.003(a) (Vernon Supp. 2009).

[Sunesara] would concede that there is no cause of action against ToyotaLift under [Chapter 82 of the Texas Civil Practice and Remedies Code]. In fact, under the threat of special exceptions, [Sunesara] amended his petition and laid out his causes of action against ToyotaLift, none of which fell under § 82.001.... [Sunesara] did leave open the possibility should evidence revealed through discovery present an exception under § 82.003 in which ToyotaLift would be responsible. But because of the reasons previously stated and the fact that the discovery is ongoing, [Sunesara] cannot point to evidence that ToyotaLift is subject to any of the exceptions under § 82.003.

The trial court granted summary judgment and dismissed all of Sunesara's claims against ToyotaLift.

On May 2, 2008, ToyotaLift filed its motion for summary judgment on its cross-claim against TIEM for indemnity and recovery of attorney's fees under Chapter 82 of the Civil Practice and Remedies Code, and TIEM subsequently filed its own motion for summary judgment and responded to ToyotaLift's motion. The trial court granted ToyotaLift partial summary judgment as to liability and denied TIEM's motion for summary judgment. On January 13, 2009, the trial court conducted an evidentiary hearing to determine the amount of damages and attorney's fees for which TIEM was liable. On February 2, 2009, the trial court severed ToyotaLift's cross-claim and entered a final judgment awarding ToyotaLift $39,182 in attorney's fees, $20,000 in conditional appellate attorney's fees, and $2,596.93 in expenses, post-judgment interest, and costs. TIEM appealed.

## Analysis

In its first issues, TIEM argues that the trial court erred in granting ToyotaLift's motion for summary judgment on the basis that TIEM was required to indemnify ToyotaLift for expenses it incurred in defending itself in Sunesara's suit because no products liability claims were made against ToyotaLift. ToyotaLift argues that Chapter 82 requires indemnity for products liability actions, not just for products liability claims, and, therefore, the trial court did not err because Sunesara's negligence claim against ToyotaLift was part of a products liability action.

### A. Standard of Review

We review a trial court's grant or denial of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). To prevail on a traditional summary judgment motion, the movant has the burden of proving that it is entitled to judgment as a matter of law and that there are no genuine issues of material fact. Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides, determine all questions presented and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex.2004).

### B. Indemnification Under Chapter 82

Under the common law, a manufacturer was not required to indemnify a seller of its products "unless and until there was a judicial finding of negligence on the part of the manufacturer." *Owens & Minor, Inc. v. Ansell Healthcare Prods. Inc.*, 251 S.W.3d 481, 483 (Tex.2008) (citing *Humana Hosp. Corp. v. Am. Med. Sys., Inc.*, 785 S.W.2d 144, 145 (Tex.1990)). Howev-

er, the legislature supplemented the common law by enacting Section 82.002 of the Texas Civil Practice and Remedies Code, which allows "an innocent seller to seek indemnification from the manufacturer of an allegedly defective product." *Id.* at 483–84.

Section 82.002 of the Texas Civil Practice and Remedies Code provides:

(a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

(b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

. . . .

(e) The duty to indemnify under this section:

(1) applies without regard to the manner in which the action is concluded; and

(2) is in addition to any duty to indemnify established by law, contract, or otherwise.

(f) A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.

(g) A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.002 (Vernon 2005).

Chapter 82 also defines "products liability action":

"Products liability action" means any action against a manufacturer or seller for recovery of damages ... allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(2) (Vernon 2005).

In *Meritor Automotive, Inc. v. Ruan Leasing Company,* the Texas Supreme Court addressed the question of what constitutes a "products liability action" in terms of a product manufacturer's duty to indemnify an innocent seller. 44 S.W.3d 86, 88 (Tex.2001). In *Meritor,* a truck driver was injured while attempting to open the hood of his truck. *Id.* at 87. He filed a products liability suit against the manufacturers of the truck and its hood and the leasing company that had leased the truck to his employer. *Id.* The manufacturers agreed to indemnify the leasing company [4] in defending the suit. *Id.* Subsequently, the injured driver amended his pleadings to add an allegation that the leasing company was independently negligent in failing to maintain the hood, caus-

---

4. The leasing company was in the position of a "seller" as contemplated by the statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(3) (Vernon 2005) (" 'Seller' means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce, for use or consumption a product or any component part thereof.").

ing the leasing company to hire its own attorney and to file a cross-claim against the manufacturers seeking indemnification for all damages and expenses. *Id.* The driver settled his claims with the manufacturers and eventually non-suited his claims against the leasing company, leaving only the leasing company's cross-claim for indemnification against the manufacturers. *Id.*

The manufacturers argued that they were not obligated to indemnify the leasing company for its negligence defense because the negligence claim was not part of the products liability action. *Id.* The leasing company argued that the negligence claim was and remained a part of the products liability action because the negligence claim was never established to be a cause of the truck driver's injury. *Id.* The supreme court held that the manufacturers were required to indemnify the leasing company for the damages and expenses it accrued in defending its independent negligence claim. *Id.* at 90–91. *Meritor* emphasized that Section 82.002 requires a manufacturer to indemnify the seller regardless of how the injury action is resolved and held that the manufacturer's duty begins when it is given notice that its product is alleged to be defective in a plaintiff's petition or complaint. *Id.* *Meritor* stated:

> In describing the manufacturer's duty, section 82.002(a) provides that the manufacturer must indemnify the seller except when the loss is "caused by the seller's negligence [or other independent culpable conduct]." Section 82.002(e)(1) then further elaborates on the manufacturer's duty to indemnify, stating that it "applies without regard to the manner in which the action is concluded." Thus, under (e)(1), it is the manufacturer's "duty to indemnify" that applies regardless of outcome, and plaintiff's pleadings are accordingly sufficient to invoke that

duty. But for the Manufacturers to implicate section 82.002(a)'s exception to that duty, it must be established that seller's conduct "caused" the loss. In this instance, the statute's plain language indicates that the plaintiff's pleadings are not sufficient to invoke the exception.

> Legislative history further confirms that the exception applies only upon a finding that the seller was independently liable. The Senate Bill Analysis explains that the Act's purpose was to "expand the indemnity rights sellers now have by requiring manufacturers to indemnify them, regardless of the outcome of the suit, for all losses from a products liability suit where the seller was not at fault." The House Bill Analysis likewise confirms that the Act requires manufacturers to indemnify sellers for all costs incurred in a products liability action "as long as the seller was not negligent or otherwise at fault." This analysis goes on to explain that under the exception, "Retailers would still be held responsible if they were truly negligent, engaged in intentional misconduct or altered a product."

> In sum, a "products liability action" includes not only products liability claims but also other theories of liability properly joined thereto, such as the allegation of negligence in this case. And while the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant, the exception to that duty is established by a finding that the seller's independent conduct was a cause of the plaintiff's injury.

*Id.* at 91 (internal citation omitted). Thus, *Meritor* held that a negligence claim that is properly joined to a products liability action is to be considered part of the products liability action in terms of a manufac-

turer's duty to indemnify an innocent seller, and the manufacturer is required to indemnify the seller for any loss arising out of the action except when there is a finding that the seller independently caused the loss. *Id.* at 87.

The supreme court has reaffirmed that the manufacturer's duty to indemnify is triggered by the pleadings and not by proof of defect. *See Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.,* 251 S.W.3d 481, 485–86 (Tex.2008) (holding that manufacturer is only liable to indemnify seller for manufacturer's own products and stating, "[T]he pleadings must properly allege that the named defendant is a manufacturer of the product under the statutory definition to establish a nexus between the defendant manufacturer and the product, and thus trigger the protection of the statute"); *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.,* 199 S.W.3d 249, 256, 261 (Tex.2006) (holding that manufacturer of component part not alleged by plaintiff to be defective does not owe duty to indemnify seller).

Here, we must determine whether this case, in which a products liability claim against the manufacturer and a separate negligence claim against the seller were joined to an ongoing negligence action against plaintiff's employer, is subject to the analysis set forth in *Meritor.* TIEM argues that *Meritor* is distinguishable from the present case because Sunesara did not allege any products liability claims against ToyotaLift, and, therefore, TIEM

is not liable to indemnify it for the losses in defending its separate negligence claim. In *Meritor,* the leasing company had products liability claims made against it in addition to the separate negligence claim, whereas here Sunesara amended his pleadings removing any products liability claims against ToyotaLift, leaving only a claim against ToyotaLift for its own negligence. TIEM maintains that Sunesara's pleadings were not sufficient to trigger the duty to indemnify.[5]

ToyotaLift argues that *Meritor* does apply here. ToyotaLift was added as a defendant to Sunesara's suit as part of a products liability action, regardless of the exact claims made against it. Thus, ToyotaLift argues that Sunesara's negligence claim against it is part of a products liability action. Furthermore, the trial court granted ToyotaLift's summary judgment denying Sunesara's separate negligence claim against it, and, therefore, the exception in the indemnity statute has not been triggered because there has been no finding that ToyotaLift's independent conduct was a cause of Sunesara's injury.

While the situation here is not exactly analogous to that in *Meritor,* it is still clear from Sunesara's pleadings that the basis of his claims against TIEM was that the forklift was defective and caused his injury. His second amended petition alleges specific products liability claims against TIEM regarding specific defective components, and it alleges that ToyotaLift was negligent in maintaining the forklift

---

**5.** As part of its argument that no products liability claims were alleged TIEM also argues that there must be a "nexus" between the claims asserted and the sale of a defective product, citing *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.,* 251 S.W.3d 481, 485 (Tex.2008). In holding that a manufacturer only owes a duty to indemnify a seller for losses in defending a product liability suit relating to its own products and not those of other manufacturers, *Owens & Minor* stated that "it is unmistakable that the duty under Section 82.002 is premised on a nexus between a given manufacturer and its product." *Id. Owens & Minor's* requirement that there be a connection between the manufacturer and product that is allegedly defective is met in this case, as it is undisputed that TIEM manufactured the allegedly defective forklift.

and in "failing to use ... due care to test and/or inspect [the] forklift or the component parts in question." Sunesara's petition also states his intention to reassert products liability claims against ToyotaLift if he discovered any basis for such claims. Because Sunesara alleges that a defect in the forklift manufactured by TIEM caused him harm, his pleadings implicate the indemnity provision in Section 82.002 covering "loss arising out of a products liability action." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a); *Meritor*, 44 S.W.3d at 91 (holding that "a 'products liability action' includes not only products liability claims but also other theories of liability properly joined thereto"). Thus, Sunesara's pleadings triggered TIEM's duty to indemnify ToyotaLift,[6] and those pleadings, as well as ToyotaLift's cross-claim against TIEM, put TIEM on notice of that duty. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(f); *Meritor*, 44 S.W.3d at 91. Furthermore, the exception listed in section 82.002 does not apply here because the trial court found that ToyotaLift was not independently liable for Sunesara's injury. *See Meritor*, 44 S.W.3d at 91; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a). Thus, the trial court did not err in granting summary judgment on this ground.

We overrule TIEM's first issue.

## C. "Loss" under Chapter 82

In its second issue, TIEM argues that the trial court erred in awarding attorney's fees to ToyotaLift when the fees were not incurred in connection with the defense of products liability claims. Specifically, TIEM argues that ToyotaLift did not incur any "loss," and thus is not entitled to pursue its claim for costs, expenses and attorney's fees. We have already determined that the negligence claim against ToyotaLift was part of a products liability action, and therefore, ToyotaLift is entitled to indemnity for the losses it incurred in defense of that claim as defined in the statute. Section 82.002(b) specifically provides that loss "includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages." TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(b). ToyotaLift thus was entitled to indemnification for its reasonable costs, expenses, and attorney fees. *See id.*

TIEM also argues that the fees award was not reasonable because ToyotaLift did not segregate fees which may be recoverable from those which are not and because ToyotaLift played no role in the defense of the allegedly defective product. As we have already held, ToyotaLift was entitled to indemnity on all of its expenses and fees, so segregation was not necessary.

6. TIEM repeatedly cites Sunesara's response to ToyotaLift's motion for summary judgment, in which Sunesara states that he is not alleging a products liability claim against ToyotaLift. However, Sunesara's statements and representation in his response to a motion for summary judgment do not alter the underlying nature of the case. A manufacturer's duty to indemnify the seller of its products is invoked by the plaintiff's pleadings. *See Meritor*, 44 S.W.3d at 91; *see also Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.*, 251 S.W.3d 481, 485–86 (Tex.2008) (holding that manufacturer is liable to indemnify seller only for manufacturer's own products and stating, "[T]he pleadings must properly allege that the named defendant is a manufacturer of the product under the statutory definition to establish a nexus between the defendant manufacturer and the product, and thus trigger the protection of the statute"); *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256, 261 (Tex.2006) (holding that manufacturer of component part not alleged by plaintiff to be defective does not owe duty to indemnify seller). Likewise, TIEM's attempt to rely on Sunesara's amendment of his pleading following its filing of special exceptions is meritless. As we have discussed, the claims against TIEM and ToyotaLift in the second amended petition are still part of a products liability action.

Furthermore, ToyotaLift did defend itself against the separate negligence claim that we have already held was part of the products liability action for which TIEM had a duty to indemnify.

We overrule TIEM's second issue.

## Conclusion

We affirm the judgment of the trial court.