2012 OK CIV APP 11

Don HONEYWELL, Plaintiff,

v.

GADA BUILDERS, INC., Larry Brannon Plumbing & Mechanical, Inc., and Hughes Electric, Inc., Defendants,

and

Larry Brannon Plumbing & Mechanical, Inc., and GADA Builders, Inc., Third–Party Plaintiffs/Appellees,

v.

Gastite, a division of Titeflex, a foreign corporation, Third–Party Defendant/Appellant.

No. 109,277.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 27, 2011.

Certiorari Denied Jan. 23, 2012.

Truman B. Rucker, Wilson, Cain & Acquaviva, Tulsa, Oklahoma, Michael G. McAtee, McAtee & Woods, P.C., Oklahoma City, Oklahoma, for Third–Party Plaintiffs/Appellees.

Joseph R. Farris, Jeremy K. Ward, Feldman, Franden, Woodard, Farris, Tulsa, Oklahoma, for Third–Party Defendant/Appellant.

KENNETH L. BUETTNER, Judge.

¶1 Plaintiff Don Honeywell's house was struck by lightning and destroyed by fire. Plaintiff sued GADA Builders, Inc. (Builder), the homebuilder, and Larry Brannon Plumbing & Mechanical, Inc. (Plumber), the subcontractor hired to install the gas distribution system, for negligence and breach of contract. Plumber filed a third party petition against Gastite, the manufacturer of the corrugated stainless steel tubing (CSST) used in the distribution system. Counsel for Gastite entered an appearance in the case. Plaintiff then filed an Amended Petition adding Gastite as a Defendant and alleging damages caused by the defective CSST against Gastite, Builder, and Plumber. Plaintiff later filed a Second Amended Petition, abandoning his negligence theory and alleging strict products liability claims against Gastite, Builder, Plumber. Plaintiff settled with the Defendants. Based on 12 O.S. Supp.2004 § 832.1, Builder and Plumber sought indemnification from Gastite, the manufacturer, for attorney fees and costs incurred in defending the product liability action. The trial court granted summary judgment to Builder and Plumber and ordered Gastite to indemnify them for attorney fees and costs incurred between March 27, 2007, the date Gastite's counsel entered an appearance, and the conclusion of the indemnification proceedings. As a matter of first impression, Gastite asks this court to interpret 12 O.S. § 832.1. After *de novo* review, we hold that Gastite's duty to indemnify was triggered May 31, 2007, when Plaintiff filed his Amended Petition. Therefore, we affirm in part, reverse in part and remand for the limited purpose of calculating reasonable attorney fees and costs incurred between May 31, 2007 and the conclusion of the indemnification proceedings.

¶2 Plaintiff contracted with Builder to build his home in Broken Arrow, Oklahoma. Plumber was the subcontractor hired by Builder to install the gas distribution system throughout the house. Plumber installed the system using corrugated stainless steel tubing (CSST). The CSST was manufactured by Gastite. After Plaintiff's house was struck by lightning and destroyed, he filed the underlying lawsuit.

¶3 Plaintiff's original Petition, filed December 19, 2006, named Builder and Plumber

as defendants.[1] Plaintiff alleged the following as his first cause of action:

V. The fire and the resulting damage were caused by the improper installation of the electrical and gas distribution systems in the house.

VI. Builder was negligent in failing to supervise the work of Hughes and Plumber. Builder failed to warn the plaintiff of the fire hazard caused by the improper installation of the electrical and gas distribution systems in the house.

. . .

VII. Plumber was negligent in the installation of the gas distribution system. Plumber failed to warn the Plaintiff of the fire hazard caused by the improper installation of the gas distribution system.

IX. As a result of the negligence of the Defendants and each of them and the resulting fire, Plaintiff sustained damages in excess of $10,000.00.

Plaintiff alleged in his second cause of action that Builder was liable for breach of contract for failing to construct the home in a good and workmanlike manner.

¶4 Plumber filed a third party petition against Gastite February 21, 2007. Plumber alleged that the fire and damages claimed by the Plaintiff were caused by the failure of the CSST, that the defective CSST was manufactured by Gastite, that at the time the CSST left Gastite's control it was defective and unreasonably dangerous, and that Plaintiff was a reasonably anticipated consumer. Counsel for Gastite entered an appearance in the case March 27, 2007. Builder filed a third-party petition against Gastite April 9, 2007.

¶5 On May 31, 2007, Plaintiff filed an Amended Petition. Plaintiff named Builder, Plumber, and Gastite as Defendants and made the following allegations:

VII. The fire and the resulting damage were caused by the improper installation of the electrical and gas distribution systems in the house.

VIII. Builder was negligent in failing to supervise the work of Hughes and Plumber. Builder failed to warn the plaintiff of the fire hazard caused by the improper installation of the electrical and gas distribution systems in the house.

. . .

X. Plumber was negligent in the installation of the gas distribution system. Plumber failed to warn the Plaintiff of the fire hazard caused by the improper installation of the gas distribution system.

XI. The fire and resulting damage were caused by the failure of the corrugated stainless steal tubing (CSST). The CSST was manufactured and placed in the stream of commerce by Gastite, a division of Titeflex.

XII. The CSST was installed by the Defendant, Plumber, at the direction and under the supervision of Builder.

XIII. The CSST was defective at the time it left the control of Gastite. The defect made the product unreasonably dangerous. The Plaintiff was a reasonably anticipated consumer of CSST.

XIV. As a result of the negligence of the Defendants, Builder, Plumber and Hughes Electric, the failure of the Gastite CSST and the resulting fire, Plaintiff sustained damages in excess of $10,000.00.

Plaintiff also recited his second cause of action against Builder for breach of contract for failing to construct the home in a good and workmanlike manner.

¶6 The parties engaged in discovery for eighteen months and filed cross-claims seeking indemnification and/or contribution. Plaintiff filed a Second Amended Petition December 18, 2008. Plaintiff abandoned his negligence theory against Builder and Plumber and alleged strict products liability claims against Gastite, Builder, and Plumber: [2]

VII. The fire and resulting damage were caused by a defective product, corrugated

---

1. Hughes Electric, Inc. was also named as a Defendant, but Hughes is not a party to this appeal.

2. Strict products liability is commonly referred to as Manufacturers' Products Liability in Oklahoma. *See Kirkland v. Gen. Motors Corp.*, 1974 OK 52, ¶20, 521 P.2d 1353, 1361.

stainless steel tubing (CSST) *sic* was designed and manufactured by the Defendant, Gastite. The CSST was defective at the time it left the control of Gastite. The defect made the product unreasonably dangerous. The Plaintiff was a reasonably anticipated consumer of CSST.

VIII. Defendants, Builder, Plumber, and Gastite, a division of Titeflex, sold and/or distributed the defective product and are liable to Plaintiff under Oklahoma's manufacturers products liability.

Plaintiff maintained his breach of contract action against Builder, but changed the theory of liability:

X. Pursuant to the terms of the contract, the Defendant was to construct a home free of defective material and products.

XI. The Defendant, Builder, breached its contract by failing to provide the home to the Plaintiff free of defective materials and products. As a result of the breach of contract, a fire occurred which destroyed Plaintiff's home and personal property.

¶ 7 Shortly after Plaintiff filed his Second Amended Complaint, Gastite defended the lawsuit on behalf of Builder and Plumber. Builder and Plumber claimed they were sellers of CSST and, based on 12 O.S. § 832.1, sought indemnification from Gastite, the product manufacturer, for attorney fees and costs incurred in defending the product liability action. All parties filed motions for summary judgment. In the meantime, Gastite settled the underlying lawsuit, and Plaintiff dismissed all claims against all Defendants November 30, 2009. Therefore, only the issue of indemnification remained for the trial court.

¶ 8 According to 12 O.S. § 832.1, "*[a] manufacturer shall indemnify and hold harmless a seller against loss arising out of a product liability action,* except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." 12 O.S. Supp.2004 § 832.1.A (emphasis added). "For purposes of this section, 'loss' includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages." *Id.*, § 832.1.B.

¶ 9 Builder and Plumber argued that the case became a "product liability action" no later than March 27, 2007, the date Gastite's attorney entered an appearance in the case. Therefore, Gastite's statutory duty to indemnify sellers for attorney fees and costs was triggered March 27, 2007. Builder and Plumber explained that Gastite was notified of the product liability action and their demands for indemnification through their third party petitions. Builder and Plumber argued that Gastite's duty to indemnify was triggered before Plaintiff abandoned his negligence theory in the Second Amended Petition filed December 18, 2008. Builder and Plumber argued that Gastite could only negate its indemnity duty by showing that Builder and Plumber's independent negligence caused the loss.

¶ 10 Gastite argued that Builder was not a "seller" as contemplated by the statute and, therefore, Gastite had no duty to indemnify Builder. Gastite argued that even if Builder was a seller, there was not a "product liability action" until Plaintiff filed his Second Amended Petition December 18, 2008. Gastite argued that Plaintiff's Second Amended Petition, for the first time, asserted product liability claims against Builder and Plumber. Gastite argued that between March 27, 2007 and December 18, 2008, Builder and Plumber only generated attorney fees and costs by defending claims against them for active and independent negligence and breach of contract, not products liability. Gastite argued that § 832.1 does not require manufacturers to indemnify sellers for fees and costs in defending Plaintiff's claims of independent negligence.

¶ 11 The trial court granted summary judgment to Builder and Plumber for attorney fees incurred between March 27, 2007, when counsel for Gastite entered an appearance in the case, and the conclusion of indemnification proceedings. Several months later, the trial court heard evidence on the amount of reasonable attorney fees. The trial court awarded $242,494.18 to Builder and $152,500.00 to Plumber for reasonable attorney fees, expenses, and costs arising out of the product liability action.

¶ 12 Gastite raises nine issues on appeal, but several are duplicates. Gastite asks this court to interpret 12 O.S. § 832.1[3] and determine whether the attorney fees and costs awarded to Builder and Plumber were reasonable. No reported Oklahoma decisions have interpreted 12 O.S. § 832.1.

¶ 13 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 42 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, ¶ 7, 976 P.2d 1043, 1045. The parties agree on the facts material to this dispute. Where the facts are not disputed, an appeal presents only a question of law. *Jones v. Purcell Investments, LLC*, 2010 OK CIV APP 15, ¶ 2, 231 P.3d 706, 708. In its Petition in Error, Gastite has alleged the question of law is the interpretation of 12 O.S. § 832.1. Issues of statutory construction are questions of law to be reviewed *de novo*, and appellate courts exercise plenary, independent, and non-deferential authority. *Welch v. Crow*, 2009 OK 20, ¶ 10, 206 P.3d 599, 603. In cases requiring statutory construction, the cardinal rule is to ascertain and give effect to the intent of the Legislature. *Id.* The words of a statute will be given a plain and ordinary meaning, unless it is contrary to the purpose and intent of the statute considered as a whole. *Naylor v. Petuskey*, 1992 OK 88, ¶ 4, 834 P.2d 439, 440. Legislative purpose and intent may be ascertained from the language in the title to a legislative enactment. *Id.*

## BUILDER WAS A SELLER OF CSST

¶ 14 According to 12 O.S. § 832.1, manufacturers are required to indemnify sellers for loss arising out of a product liability action. 12 O.S. Supp.2004 § 832.1.A. "[A] wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller." *Id.*, § 832.1.D.

¶ 15 Builder filed a motion for summary judgment arguing it was entitled to indemnity for attorney fees and costs incurred while defending Plaintiff's claims. Builder included in its statement of material facts not in dispute: "6. [Builder] was a seller of the CSST as contemplated by Title 12 O.S. § 832.1." Gastite's response admitted was: "6. Not disputed, but not material to the determination of [the indemnification issue]."

¶ 16 Gastite did not dispute Builder's status as a seller of CSST until it filed its own motion for summary judgment October 15, 2009. Despite its previous admission, Gastite claimed it was undisputed that Builder was *not* a retail seller or distributor of CSST.[4] In response, Builder cited Gastite's previous admission that Builder was a seller of CSST within the meaning of § 832.1 and argued that Gastite should be estopped from claiming otherwise.[5]

¶ 17 We hold that Builder was a seller as contemplated by 12 O.S. § 832.1. Middlemen in the chain of distribution are

3. Gastite asks this court to determine (1) whether Builder was a "seller" as contemplated by 12 O.S. § 832.1; (2) when a "product liability action" was asserted against Builder and Plumber, triggering Gastite's duty to indemnify; (3) whether the exception to the duty to indemnify is invoked by the plaintiff's pleadings or a manufacturer must prove the seller's independent negligence in order to invoke the exception; and (4) whether the trial court's order erred ruling 12 O.S. § 832.1 overruled the Oklahoma Supreme Court's decision in *Booker v. Sears Roebuck & Co.*, 1989 OK 156, 785 P.2d 297.

4. However, Gastite attached to its motion a letter, dated February 6, 2009, in which Gastite stated: "Effective immediately [Gastite] agrees to defend, indemnify and hold harmless GADA Builders based upon [Gastite's] statutory obligation set forth in 12 O.S. § 832.1 (requiring a manufacturer of a product to indemnify a seller of its product for damages caused by the manufacturer's product)."

5. Builder also noted that it was a distributor of the CSST because it purchased CSST by paying Plumber for the CSST and paying Plumber to install it in Plaintiff's house. Builder argued it was a distributor because it was involved in the stream of commerce connecting the CSST to Plaintiff, the ultimate consumer. Builder also noted that the court's interpretation of § 832.1 was needed to determine if Builder was a retail seller.

subject to strict products liability.[6] The policy reasons for imposing strict products liability on non-manufacturer sellers provide guidance in determining whether Builder should be classified as a seller. The rationale for imposing strict liability on retailers and distributors is founded upon the public interests in human safety and protecting the ultimate consumer. Retailers and distributors, like manufacturers, are engaged in the business of distributing goods to the public. "[Retailers] are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products." *Moss v. Polyco, Inc.*, 1974 OK 53, ¶ 13, 522 P.2d 622, 626 (citing *Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168, 171 (1964)). "Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationships." *Id.* (citing *Vandermark*, 37 Cal.Rptr. 896, 391 P.2d at 172). The same policy reasons justify imposing strict liability on distributors. A distributor, for the purpose of strict products liability, is defined as "one who engages in the activity of making the defective product available for the use of others." *Potter v. Paccar Co.*, 519 F.Supp. 487, 489 (W.D.Okla.1981).

¶ 18 Plaintiff contracted with Builder to build a home, which inherently included purchasing all of the building materials. Builder subcontracted with Plumber to install the gas distribution system, which included purchasing the CSST and other materials used in the system. Plumber purchased the CSST from Gastite, the manufacturer. Plumber was certified by Gastite to install the CSST. The purpose of § 832.1 is to require the manufacturer to indemnify those in the distribution chain against expenses and damages in product liability actions. For purposes of this statute, the builder of a house is a "seller" of the products used in the construction of the house.

## GASTITE'S DUTY TO INDEMNIFY BUILDER AND PLUMBER WAS TRIGGERED BY PLAINTIFF'S AMENDED PETITION

¶ 19 We must determine when the underlying lawsuit became a "product liability action" and Gastite's statutory duty to indemnify Builder and Plumber for their attorney fees and costs was triggered. Title 12 O.S. § 832.1.A. states: "A manufacturer shall indemnify and hold harmless a seller against loss *arising out of a product liability action* . . ." (emphasis added).

¶ 20 A manufacturer's duty to indemnify a seller for attorney fees and costs arising out of a product liability action is triggered by the plaintiff's pleadings.[7] The Legislature intended to provide indemnity to sellers regardless of the outcome of the case.[8] The Legislature also intended that the indemnity duty was to be based on the plaintiff's pleadings.[9] The general philosophy of the Oklahoma Pleading Code is that pleadings should give fair notice of the plaintiff's claim and be subject to liberal amendment. *Wilson v. Webb*, 2009 OK 56, ¶ 9, 221 P.3d 730, 734. Pleadings should be liberally

---

6. Each member of the distributive chain is liable if they sold the defective product that injured the plaintiff and if the product left the seller's control in a defective condition. *See Kirkland v. Gen. Motors Corp.*, 1974 OK 52, ¶ 21, 521 P.2d 1353, 1361; Restatement 2d of Torts § 402A(1)(b) (1965). The manufacturer, retailer, wholesaler, and distributor each owes "a separate and nondelegable duty to market a safe product." *Braden v. Don Hendricks*, 1985 OK 14, ¶ 19, 695 P.2d 1343.

7. *See Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86 (Tex.2001) (citing *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex.1999)) ("In *Fitzgerald*, we conclud-

ed that pleadings joining a seller as defendant in a products liability action were sufficient to invoke the manufacturer's indemnity duty under the Act.").

8. "The duty to indemnify under this section . . . [a]pplies without regard to the manner in which the action is concluded . . ." 12 O.S. § 832.1.E.1.

9. *See* 12 O.S. § 832.1.F.: "A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of *a product claimed in a petition or complaint to be defective,* unless the manufacturer has been served as a party or otherwise has actual notice of the action." (emphasis added).

construed so as to do substantial justice. *Id.* Accordingly, we liberally construe Plaintiff's petitions to determine when the lawsuit became a product liability action and the manufacturer's statutory duty was triggered. A "product liability action" is based on injuries caused by a defective product. In order for there to be a "product liability action," the plaintiff must plead that a product was defective.

¶ 21 Gastite argues that between March 27, 2007 (when Gastite's counsel entered an appearance) and December 18, 2008 (when Plaintiff filed his Second Amended Petition) no product liability claim was asserted against Builder or Plumber; therefore, there was no "product liability action." Gastite argues it did not have a duty to indemnify Builder and Plumber before December 18, 2008, because Builder and Plumber were only defending independent negligence claims.

¶ 22 We agree with Gastite with respect to the period of time between March 27, 2007 and May 30, 2007. Plaintiff's original Petition did not allege damages caused by a defective product; therefore, there was no product liability action. The trial court erred in finding the duty to indemnify was triggered when Gastite's counsel entered an appearance in the case. Plaintiff's pleadings triggered Gastite's duty to indemnify, not Plumber's third-party petition. A seller cannot transform a negligence action into a "product liability action" via a third-party petition. Only the plaintiff's pleadings can create a "product liability action." Gastite did not have a duty to indemnify Builder or Plumber between March 27, 2007 and May 30, 2007. Therefore, we reverse the trial court's order that Gastite had a duty to indemnify Builder and Plumber for attorney fees and costs generated between March 27, 2007 and May 30, 2007.

¶ 23 Plaintiff filed an Amended Petition May 31, 2007. Gastite argues that the Amended Petition merely repeated the claims in Plaintiff's original Petition that Builder and Plumber were negligent, independent of any allegations that the CSST was defective. Gastite suggests that Plaintiff amended his petition to name Gastite as a defendant and assert a products liability claim against Gastite only. We disagree. Gastite has mis-characterized the allegations made against Builder and Plumber in Plaintiff's Amended Petition. We hold that Plaintiff's Amended Petition alleged a product liability action against Builder and Plumber and triggered Gastite's duty to indemnify Builder and Plumber.

¶ 24 Reading the Amended Petition liberally, Plaintiff alleged product liability claims against not only Gastite, but also Builder and Plumber. A product liability action is based on an injury caused by a defective product. A plaintiff injured by a defective product can utilize various theories to recover for injuries caused by the product. A product liability action may be based on a theory of negligence liability or strict products liability. The Oklahoma Supreme Court in the seminal products liability case, *Kirkland v. General Motors Corp.*, noted that a plaintiff is not required to elect one theory of liability. 1974 OK 52, ¶ 40, 521 P.2d 1353, 1365. Even with the advent of strict products liability, the negligence cause of action remains available to a plaintiff injured by a defective product.

¶ 25 Plaintiff alleged in his Amended Petition that the CSST was a defective product, that Plumber negligently installed a defective product, that Builder negligently directed and supervised the installation of the defective product, and that he was injured by the defective product. The negligence claims against Builder and Plumber were not claims of negligence independent of the defective product. Rather, Plaintiff claimed negligent installation of the defective product and negligent supervision of its installation. Therefore, based on the allegations made in Plaintiff's Amended Petition, a product liability action commenced and Gastite's statutory duty to indemnify Builder and Plumber was triggered May 31, 2007. We affirm the trial court's order that Gastite had a duty to indemnify Builder and Plumber for defense costs sustained between May 31, 2007 and the conclusion of the indemnification pro-

ceedings.[10]

¶ 26 A manufacturer's statutory duty to indemnify a seller for attorney fees and costs is analogous with an insurer's duty to defend the insured.[11] The insurer and the manufacturer are obligated to finance the insured and seller's defense, respectively. The insurer defends on behalf of the insured [12] and the manufacturer indemnifies the seller for its defense costs. Just as the insurer's duty is triggered by facts gleaned from the plaintiff's pleadings against the insured, the manufacturer's duty is triggered by the plaintiff's pleadings against the seller. If the plaintiff states a claim against the insured that is potentially covered by the insurance contract, the insurer's duty is triggered. However, if the plaintiff makes allegations that are not potentially covered by the insurance contract, the insurer has no duty. If the plaintiff asserts a product liability action against the seller, the manufacturer's duty is triggered. But if the plaintiff asserts a non-product liability action against the seller, the manufacturer has no duty.

¶ 27 Builder and Plumber relied heavily on Texas case law. Texas has a nearly identical products liability indemnification statute.[13] We recognize that the outcome in this case aligns with the outcome of the Texas Supreme Court's decision in *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86 (Tex.2001).[14] However, the facts of this case,

10. "A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section." 12 O.S. § 832.1.G.

11. A liability insurance policy generally contains two basic duties: the insurer has a duty to defend its insured and a duty to indemnify its insured for damages. *First Bank of Turley v. Fidelity & Deposit Ins. Co. of Maryland*, 1996 OK 105, ¶ 13, 928 P.2d 298, 302. The duty to defend is separate from, and broader than, the duty to indemnify, but the insurer's obligation is not unlimited. *Id.*, ¶ 13 at 303. The duty to defend is measured by the nature and kinds of risks covered by the policy as well as by the reasonable expectations of the insured. *Id.* An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to the potential of liability under the policy. *Id.* "The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action." *Id.*, ¶ 13 at 303–04. After the insurer receives notice of a third party's claim against the insured, it must determine whether a potential for coverage exists under the policy. *Id.*, ¶ 14 at 304.

12. If the insurer owes the insured a duty to defend under the insurance contract and the insurer refuses to defend, the insurer is liable "for all reasonable expenses incurred by an insured in defense of the third-party action." *Id.*, ¶ 17 at 304.

13. TEX. CIV. PRAC. & REM. CODE § 82.002 (West):
(a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.
(b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.
(c) Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable for purposes of this section.
(d) For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.
(e) The duty to indemnify under this section:
(1) applies without regard to the manner in which the action is concluded; and
(2) is in addition to any duty to indemnify established by law, contract, or otherwise.
(f) A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.
(g) A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section.

14. Recently, the Texas Supreme Court returned to the products liability indemnity statute in *Toyota Industrial Equip. Mfg. v. Carruth–Doggett, Inc.*, 325 S.W.3d 683 (2010). The outcome in this case also aligns with that in *Toyota*. The plaintiff's negligence claim against the seller in *Toyota* was based on a defective product and the court held:
[I]t is still clear from [the plaintiff's] pleadings that the basis of the claims against [the Manufac-

including the allegations made in Plaintiff's pleadings, do not mirror the facts and allegations in *Meritor*. Therefore, our holding is limited to the facts before this court, not the facts of *Meritor*.

¶ 28 The Texas Supreme Court held that "the seller's reasonable cost to defend an unsuccessful negligence claim, asserted independently of the products liability claim, is properly included as part of the 'loss arising out of a products liability action,' so that it is within the manufacturer's indemnity duty." *Meritor*, 44 S.W.3d at 87 (disapproving *Hurst v. Amer. Racing Equip., Inc.*, 981 S.W.2d 458 (Tex.App.1998)). In the case before this court, Plaintiff's Amended Petition did not contain a "negligence claim, asserted independently of the products liability claim." The issue on appeal is not whether a claim of truly independent negligence against a seller joined to a strict products liability claim against a manufacturer is part of a "product liability action" for purposes of 12 O.S. § 832.1. For the reasons discussed above, Plaintiff's Amended Petition asserted product liability claims against Builder and Plumber, not negligence claims unrelated to a defective product. Where a negligence claim is based on a defective product, the reasonable cost of defending that claim is a "loss arising out of a product liability action."

## EXCEPTION TO INDEMNITY DUTY

¶ 29 Title 12 O.S. § 832.1.A. includes an exception to the manufacturer's indemnity duty: "A manufacturer shall indemnify and hold harmless a seller against loss arising out of a product liability action, *except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.*" 12 O.S. Supp.2004 § 832.1.A (emphasis added).

¶ 30 On appeal, Gastite asks this court to determine "[w]hether the trial court erred in interpreting 12 O.S. § 832.1 as requiring the manufacturer to prove its seller committed active and independent negligence to defend a claim for indemnification-even though the Plaintiff specifically pled *active* and *independent* negligence causes of action against the seller." We previously discussed Gastite's mischaracterization of the claims asserted against Builder and Plumber in Plaintiff's Amended Petition. Plaintiff alleged active and independent negligence against Builder and Plumber in his original Petition. However, in his Amended Petition, Plaintiff asserted claims against Builder and Plumber for damages arising out of property damage caused by a defective product. Plaintiff based his product liability claims against Builder and Plumber on a negligence theory of liability and abandoned his claims of independent negligence. Thus, the lawsuit became a "product liability action," free of independent negligence claims against Builder and Plumber.

¶ 31 While a manufacturer's indemnity duty is triggered by the plaintiff's pleadings, the exception to the duty is not. The exception only applies if the manufacturer proves that the seller's independent conduct caused the plaintiff's injuries. The statute requires a manufacturer to indemnify an innocent seller for certain damages and litigation expenses arising out of a product liability action but requires the seller to bear the damages and expenses they cause. *See Meritor*, 44 S.W.3d at 88; *Fitzgerald*, 996 S.W.2d at 867. While we do not expressly adopt the Texas Supreme Court's decision with respect to what "product liability action" means, we do find *Meritor* persuasive in determining when the indemnification exception is invoked. The *Meritor* court rejected the manufacturer's argument that it

turer were] that the [product] was defective and caused his injury. His second amended petition alleges specific products liability claims against [the Manufacturer] regarding specific defective components, and it alleges that [the Seller] was negligent in maintaining the [product] and in "failing to use ... due care to test and/or inspect [the product] or the component parts in ques-

tion." ... Because [the plaintiff] alleges that a defect in the [product] manufactured by the Manufacturer caused him harm, his pleadings implicate the indemnity provision in Section 82.002 covering "loss arising out of a products liability action."
*Toyota*, 325 S.W.3d at 690–91.

should be permitted to establish the exception to the indemnity duty through the plaintiff's pleadings. 44 S.W.3d at 91. The Texas Supreme Court held that the "statute's plain language indicates that the plaintiff's pleadings are not sufficient to invoke the exception" and that "while the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant, the exception to that duty is established by a finding that the seller's independent conduct was the cause of the plaintiff's injury." *Id.*

¶ 32 The allegations made in Plaintiff's petitions were insufficient to invoke the exception under § 832.1. Plaintiff abandoned his claims against Builder and Plumber based on negligence in his Second Amended Petition. Prior to trial, Plaintiff and Gastite settled the underlying lawsuit, and Plaintiff dismissed all claims against all Defendants. The case concluded without a determination that Builder or Plumber's independent conduct caused the fire. Section 832.1.E.1. suggests the Legislature anticipated situations when the parties settle the product liability action. Sellers are entitled to indemnity regardless of "the manner in which the action is concluded." 12 O.S. § 832.1.E.1. In this summary judgment appeal, the record does not contain evidence that either Builder or Plumber's independent negligence caused Plaintiff's injury. We hold that the exception does not apply and affirm the trial court's order with regard to that issue.

## § 832.1 AND *BOOKER v. SEARS ROEBUCK & CO.*

¶ 33 Gastite asks this court to reconcile 12 O.S. § 832.1 and *Booker v. Sears Roebuck & Co.,* 1989 OK 156, 785 P.2d 297. The decision in *Booker* was based on the manufacturer's common law duty to indemnify a seller for attorney fees and costs.[15] By enacting § 832.1, the Legislature established the manufacturer's statutory duty to indemnify a seller for attorney fees and costs. *Booker* was decided in 1989, and § 832.1 was enacted in 2004. To the extent Gastite relies on *Booker* and § 832.1 modifies *Booker,* the statute controls.[16]

## REASONABLENESS OF ATTORNEY FEES

¶ 34 A trial court's award of attorney fees is reviewed for abuse of discretion. *Spencer v. Okla. Gas & Elec. Co.,* 2007 OK 76, ¶ 13, 171 P.3d 890, 895. An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. *Id.* Generally, the correct formula for calculating a reasonable fee is to: 1) determine the lodestar fee by multiplying the attorney's hourly rate by the hours expended; and 2) modify the fee through consideration of the *Burk* factors.[17] *Id.,* ¶¶ 13–14, 171 P.3d at 895.

¶ 35 Builder and Plumber incurred significant attorney fees and costs while defending

---

15. "Oklahoma has previously recognized that a manufacturer may be found to have a duty to indemnify its dealer against claims for loss caused by the manufacturer's defective product." *Booker,* 785 P.2d at 298 (citing *Braden v. Hendricks,* 1985 OK 14, 695 P.2d 1343). "Reasonable attorney fees have been allowed, as part of damages, to an indemnitee so long as the fees were incurred in defense of the claim indemnified against." *Id.* at 298–99 (citing *United Gen. Ins. v. Crane Carrier Co.,* 1984 OK 47, 695 P.2d 1334). "However, indemnification of legal costs is not permissible where an adverse position has been taken by the claimant against the party from whom indemnity is sought. This is due to the necessity of a benefit being conferred on the indemnitor before the law will impose an obligation." *Id.* at 299 (citing *Berry v. Barbour,* 1954 OK 358, 279 P.2d 335).

16. "The duty to indemnify under this section ... [i]s in addition to any duty to indemnify established by law, contract, or otherwise." 12 O.S. § 832.1.E.2.

17. The factors set out in *Burk v. Oklahoma City,* 1979 OK 115, ¶ 8, 598 P.2d 659, 661, are: time and labor required; novelty and difficulty of the questions; skill requisite to perform the legal service; preclusion of other employment; customary fee; whether the fee is fixed or contingent; time limitations; amount involved and results obtained; experience, reputation and ability of the attorneys involved; risk of recovery; nature and length of relationship with the client; and awards in similar causes.

Plaintiff's product liability action and Gastite's cross-claims. Gastite asks this court to determine whether the trial court abused its discretion by using an attorney's hourly rate for delegable work, permitting fees for duplicate effort, allowing vague time entries and block billing, and including unnecessary expert witness fees in the award. After reviewing the evidence in the record, we are not persuaded that the trial court abused its discretion.[18]

¶36 However, the trial court included in its award attorney fees, costs, and expenses generated between March 27, 2007 and May 30, 2007, when the case was not a product liability action. It was an abuse of discretion to award attorney fees, costs, and expenses for that period of time. Therefore, we reverse and remand the case for the limited purpose of calculating and awarding attorney fees, costs, and expenses generated between May 31, 2007 and the conclusion of the indemnification proceedings.[19] Attorney fees, costs, and expenses incurred prior to May 31, 2007 should be excluded from the trial court's calculation.

¶37 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

MITCHELL, P.J., and JOPLIN, J., concur.

---

**18.** Builder requested $242,494.18 and was awarded $242,494.18. Plumber requested $152,500.00 and was awarded $152,500.00. At the October 27, 2010 hearing on attorney fees, Gastite stipulated that counsel for Builder and Plumber accurately recorded their time and worked the hours listed on their billing records.

**19.** "A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section." 12 O.S. Supp.2004 § 832.1.G.