1999 OK CIV APP 129

**MUTUAL ASSURANCE ADMINISTRATORS, INC., Plaintiff/Appellant,**

v.

**U.S. RISK UNDERWRITERS, INC., Defendant/Appellee.**

**No. 92,943.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 16, 1999.

Kevin D. Gordon, Jill F. Padgett, Oklahoma City, Oklahoma, for appellant.

Jack S. Dawson, James A. Scimeca, Oklahoma City, Oklahoma, for appellee.

### OPINION

GARRETT, J:

¶ 1 Appellant, Mutual Assurance Administrators, Inc., is the insured under a Miscellaneous Professional Liability policy issued by Appellee, U.S. Risk Underwriters, Inc. The policy insured Appellant's profession as a "Third Party Administrator" of group health plans. Appellant was sued by its agent for alleged misconduct in its solicitation and retention of clients. Appellee denied the claim because the alleged misconduct was based on intentional acts by Appellant, rather than professional negligence, and was excluded under the policy. Appellant appeals the judgment filed March 17, 1999, in which the trial court sustained Appellee's motion for summary judgment and denied Appellant's motion to compel.

¶ 2 For reversal, Appellant raises the following issues:

1. Did the trial court err in granting summary judgment when material disputes of fact existed?

    a. Evidentiary materials were presented showing an issue of fact under the reasonable expectations doctrine that Appellant expected the policies to provide coverage for all of its business activities, including solicitation of and dealings with clients.

    b. Appellant presented evidentiary materials to prove the claims for which it sought coverage were in the course of its conduct as a Third Party Administrator, within the broad policy coverage.

    c. Appellant presented evidence that the claims for which it was seeking coverage included unintentional claims, which are covered by the policy.

2. Were the policies issued by Appellee ambiguous as to the type of activities which are covered by the term "conduct of the Insured's Profession" as a "Third Party Administrator"? If so, summary judgment was improper, and evidence should have been permitted on the meaning and interpretation of those terms.

¶ 3 The claim for which Appellant sought coverage from Appellee arose in a lawsuit filed against Appellant by Walton–Stroup & Preston Insurance Agency, Inc., an Oklahoma corporation, and Edward M. Preston, individually, (collectively, Preston), case number CJ 95–1407, in the District Court of Oklahoma County, Oklahoma. In the petition, Preston alleged Appellant is an Oklahoma corporation and is licensed by the Oklahoma State Insurance Commission as a "third-party, fund administrator." Preston described its relationship with Appellant and the nature of Appellant's business in its petition, as follows:

> Defendant acts as administrator for various Oklahoma employers and manages and administrates a private fund through which employees (sic) provide benefits to their employees in lieu of insurance carriers. Defendant, for a fee, arranges and supervises benefits packages to provide employees group health coverage and other benefits, partially covered by reinsurance and funded by payments to the third-party fund from the employer.

¶ 4 Preston alleged it was appointed and authorized by Appellant to market and solicit employers as clients for Appellant. Appellant paid Preston a commission on all third-party contracts between Appellant and clients solicited by Preston "pursuant to an established, unwritten agreement" between itself and Appellant. Preston also alleged it wrote two major accounts as Appellant's agent, the "Bob Moore Employees Trust" and the "Jackie Cooper Employees Trust". Preston alleged it learned Appellant made the decision to eliminate it as the agent-of-record for the Moore account. Preston alleged Appellant offered Moore a different plan with the same benefits, for a reduced premium, and accomplished this by eliminating agent commissions to Preston. Preston alleged Appellant stole the account by terminating it as agent-of-record and eliminating agent commissions.

¶ 5  The "Insuring Agreements" Section of the professional liability policy issued to Appellant by Appellee contains the following:

1.  ERRORS AND OMISSIONS.

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages and Claims Expenses resulting from any Claim or Claims first made against the Insured and reported to the Underwriters during the Policy Period for any *Wrongful Act* of the Insured, or of any other person for whose actions the Insured is legally responsible, except as excluded or limited by the terms, conditions and exclusions of this Policy, solely in the conduct of the *Insured's Profession* as stated in *Item 6 of the Declarations.*  [Emphasis supplied.]

¶ 6  "Wrongful act" is defined by the policy as follows:

Wrongful Act means any actual or alleged breach of duty, neglect, act, error, misstatement, misleading statement or omission committed solely in the conduct of the Insured's Profession as stated in *Item 6 of the Declarations.*  [Emphasis supplied.]

¶ 7  Item VI" of the policy declarations is: "Insured Profession:  Third Party Administrator."  The "Exclusions" under the policy include:

The coverage under this insurance does not apply to Damages or Claims Expenses incurred with respect:

a)  . . .

b)  to any Claim arising out of any intentional, malicious, or deliberate Wrongful Act; . . . .

¶ 8  In its motion for summary judgment, Appellee contended Appellant's alleged misconduct did not involve professional services or the conduct of its profession, but that it "flowed from mere employment", i.e., ordinary tasks performed by the business entity and its employees, which did not rise to the level of professional services.  In response, Appellant contended the Preston litigation

involved allegations relating to the operation of its business which were covered under the policy.  It contended the solicitation and retention of clients is an inherent part "of this, or any other, business", and that Appellee narrowly interpreted the policy terms and ignored the allegations in the Preston case.  Additionally, Appellant argued (1) the allegations contained in the petition of the Preston case did arise out of its conduct as a third party administrator;  (2) more than "intentional" acts were alleged;  and (3) Appellant "reasonably expected" its claims involving efforts to solicit and retain clients would be covered by the policies.  It also argued Appellee ignored the precise policy language and, instead, focused on cases from other states involving narrower policy language than that at issue herein.

¶ 9  Appellant contended the policy language, "in the conduct of" a third party administrator, clearly shows the intention to include all aspects of conduct of this profession.  It argued that contact with its clients relating to their accounts and the handling of their accounts is an integral part of its profession as a third party administrator.

¶ 10  However, Appellant's "contact with clients" was not the objectionable conduct alleged in the Preston case.  It was its conduct with its agents, i.e., the alleged conversion of their commissions, which was the basis of that lawsuit.  Moreover, as to its agents, Appellant is not a third party administrator;  it is an employer.  Its dealings with agents serve as a preliminary step to becoming a third party administrator as to others.  The wrongful acts contemplated by this professional liability policy must be wrongful acts committed by Appellant while acting in its capacity as a third party administrator.  This is not the conduct alleged by Preston.

¶ 11  The parties have not cited Oklahoma case law which defines the term "professional service", as used in the context of the policy herein, and we are aware of none.[1]  It has

---

1.  "Professional services" is referred to in the Oklahoma Statutes, 36 O.S.1991 § 707, which defines "casualty insurance".  Under § 707(9), "malpractice insurance" is included as "casualty insurance" and is described as:

9.  **Malpractice insurance,** which is insurance against legal liability of the insured, and against loss, damage, or expense incidental to a claim of such liability, and including medical, hospital, surgical, and funeral benefits to injured persons, irrespective of legal liability of

been described by other jurisdictions. In *Marx v. Hartford Accident and Indemnity Company*, 183 Neb. 12, 157 N.W.2d 870, 871–72 (1968), the Nebraska Supreme Court considered a professional liability policy covering a physician for medical malpractice. The Court held the policy provided no coverage for a fire caused by an employee technician refilling a hot water sterilizer with benzine instead of water. The Court stated:

> The insurer's liability is thus limited to the performing or rendering of 'professional' acts or services. Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some king. The term 'professional' in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. . . . In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself. . . . . [Citations omitted.]

See *Gulf Insurance Company v. Gold Cross Ambulance Service Company*, 327 F.Supp. 149 (W.D.Okl.1971), citing *Marx v. Hartford, supra,* for the definition of "professional service." The court also, citing other jurisdictions, held that the court must look to the nature of the act being performed rather than to the title of the actor involved. 327 F.Supp. 149, 152.

¶ 12 Similarly, in *Albert J. Schiff Associates, Inc. v. Flack,* 51 N.Y.2d 692, 417 N.E.2d 84, 435 N.Y.S.2d 972, the Court of Appeals of New York considered whether a professional liability "errors and omissions" policy covering plaintiff in the professional capacity of the insured as (a) Actuaries, (b) Employee Benefit Plan Consultants, and (c) Life Insurance Agents or Brokers. A competitor brought a complaint against Schiff for the "willful and malicious usurpation of a trade or commercial secret", i.e., a novel insurance program which Schiff agreed not to disclose to others. Schiff argued coverage under the policy because the allegedly misappropriated plan presumably furthered one or more of the three insurance activities mentioned in the policy. The Court of Appeals held differently and stated, at 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84, 88:

> The renting of an office, the engagement of employees, arrangements to expand the size of one's activities, these may all have some connection with a covered business or profession. But, while they may set the stage for the performance of business or professional services, they are not the professional activities contemplated by this special coverage. An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business. . . .

¶ 13 In the instant case, contact with agents may be related to, or set the stage for, Appellant's professional services as a third party administrator. However, it is not the conduct for which it is insured under the professional liability insurance policy issued by Appellee.

¶ 14 Summary judgment is proper where there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Erwin v. Frazier,* 1989 OK 95, 786 P.2d 61; *Thompson v. Peters,* 1994 OKCIVAPP 97, 885 P.2d 686 (cert. denied 1994); *Builders Steel Co., Inc. v. Hycore, Inc.,* 1994 OKCIVAPP 44, 877 P.2d 1168 (cert.denied). We find no issues of material fact present. The trial court correctly ruled Appellee was entitled to judgment as a matter of law. Our disposition of

the insured, arising out of the death, injury, or disablement of any person, or arising out of damage to the economic interest of any person, as the result of negligence in rendering expert, fiduciary, or **professional services.**

this case makes it unnecessary to consider Appellant's additional allegations of error.

¶15  AFFIRMED.

JONES, C.J., and BUETTNER, P.J., concur.