JP ENERGY MARKETING v. COMMERCE AND INDUSTRY INSURANCE CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:JP ENERGY MARKETING v. COMMERCE AND INDUSTRY INSURANCE CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 JP ENERGY MARKETING v. COMMERCE AND INDUSTRY INSURANCE CO.
2018 OK CIV APP 14
412 P.3d 121
Case Number: 115285; Cons. w/115281; 115293
Decided: 03/20/2017
Mandate Issued: 03/01/2018
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2018 OK CIV APP 14, 412 P.3d 121

 

JP ENERGY MARKETING, LLC, a foreign corporation, Plaintiff/Appellee,
v.
COMMERCE AND INDUSTRY INSURANCE COMPANY, a foreign corporation, Defendant,
ALTERRA AMERICA INSURANCE COMPANY, a foreign corporation, Defendant/Appellant,
NAVIGATORS INSURANCE COMPANY, a foreign corporation, Defendant/Appellant,
BITCO GENERAL INSURANCE CORPORATION, a foreign corporation, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
PAYNE COUNTY, OKLAHOMA

HONORABLE STEPHEN R. KISTLER, JUDGE

AFFIRMED

Mark E. Dreyer, Isaac R. Ellis, CONNER & WINTERS, LLP, Tulsa, Oklahoma, for Plaintiff/Appellee,

Sarah J. Timberlake, DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P., Oklahoma City, Oklahoma, for Defendant/Appellant Alterra American Insurance Company,

R. Lawson Vaughn, CHEEK LAW FIRM, PLLC, Oklahoma City, Oklahoma, for Defendant/Appellant Navigators Insurance Company,

Phil R. Richards, Randy J. Lewin, Casper J. den Harder, RICHARDS & CONNOR, Tulsa, Oklahoma, for Defendant/Appellant BITCO General Insurance Corporation.

Kenneth L. Buettner, Chief Judge:

¶1 Defendants/Appellants BITCO General Insurance Corporation (BITCO), Alterra America Insurance Company (Alterra), and Navigators Insurance Company (Navigators) appeal from summary judgment granted in favor of Plaintiff/Appellee JP Energy Marketing, LLC (JP). After de novo review, we hold that JP is an additional insured under the terms of the insurance policies issued by BITCO, Alterra, and Navigators and that the insurers have a duty to indemnify and defend JP in the underlying litigation. The professional services and construction operations exclusions to coverage do not apply. The indemnity agreements and agreements to name JP as an additional insured do not violate Oklahoma's anti-indemnity statute, 15 O.S. § 221. Therefore, JP is entitled to judgment as a matter of law. AFFIRMED.

¶2 JP, formerly known as Parnon Gathering, Inc., owned the Great Salt Plains Pipeline in Payne County, Oklahoma. JP entered into an Engineering, Procurement and Construction Agreement (JP-IPS Contract) with IPS Engineering, LLC (IPS) March 1, 2012. IPS was to serve as general contractor for the construction of the pipeline. IPS then entered into a subcontract with Global Pipeline Construction, LLC (Global) to perform construction services and had previously entered into a subcontract with Wilcrest Field Services, Inc. (Wilcrest) to perform certain engineering and related technical services. The JP-IPS Contract and the subcontracts required the subcontractors maintain certain insurance coverages and that they name JP or the project owner as an additional insured on their policies.

¶3 On August 4, 2012, a fire occurred where the pipeline was being constructed. Numerous property owners in multiple lawsuits sued JP, IPS, Global, and Wilcrest for damages resulting from the fire. JP requested defense and indemnity from Global and Wilcrest's insurance carriers. BITCO had issued insurance policies to Global. Alterra had issued an insurance policy to Global. Navigators had issued a policy to Wilcrest. BITCO, Alterra, and Navigators denied coverage.

¶4 JP filed a Petition for Declaratory Judgment March 26, 2015 seeking declaratory relief that it is an additional insured under the BITCO, Alterra, and Navigators policies for the claims alleged against it in the underlying litigation; that BITCO, Alterra, and Navigators are obligated to indemnify and defend JP in the underlying litigation; and that the trial court determine the priority of payments among the defendant insurers.[1] JP filed a Motion for Summary Judgment to which BITCO, Alterra, and Navigators responded and also sought summary judgment in their favor. The trial court held a hearing on the motions July 7, 2016. The trial court found JP was an additional insured under the insurance policies issued by BITCO, Alterra, and Navigators, granted JP's motion for summary judgment, and denied BITCO, Alterra, and Navigators' requests for summary judgment in their favor.[2] The Journal Entry on Motions for Summary Judgment was entered July 27, 2016. BITCO, Alterra, and Navigators appeal.[3]

 

¶5 We review the trial court's grant of summary judgment de novo. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2011 ch. 2, app. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. Brown v. Alliance Real Estate Group, 1999 OK 7, ¶ 7, 976 P.2d 1043. Where the facts are not disputed, an appeal presents only a question of law. Jones v. Purcell Investments, LLC, 2010 OK CIV APP 15, ¶ 2, 231 P.3d 706. Here, the material facts are not in dispute. The questions of law presented concern contract interpretation and statutory construction, which we review de novo. See May v. Mid-Century Ins. Co., 2006 OK 100, ¶ 22, 151 P.3d 132 (contract interpretation); Welch v. Crow, 2009 OK 20, ¶ 10, 206 P.3d 599 (statutory construction).

¶6 The parties' dispute centers around whether JP is an additional insured under the terms of four insurance policies. BITCO, Alterra, and Navigators contend JP is not an additional insured, because they do not have a direct contractual relationship with JP. JP argues the additional insured endorsements do not require privity of contract. Instead, the policy language at issue requires only that both have agreed in a written contract that JP will be added as an additional insured. JP argues that, when read together, the JP-IPS Contract and the subcontracts satisfy this requirement.

¶7 Because the policy language is the same for the BITCO and Alterra policies, we will analyze them together.

BITCO COMMERCIAL LINES POLICY AND
BITCO UMBRELLA POLICY ISSUED TO GLOBAL

¶8 At the time of the fire, Global was insured by a $2,000,000.00 per occurrence Commercial Lines Policy issued by BITCO (BITCO general policy) and a $5,000,000.00 Commercial Umbrella Policy also issued by BITCO (BITCO umbrella policy). The BITCO general policy contains an Oil and Gas Extended Liability Coverage Endorsement that defines who is an insured:

SECTION II - WHO IS AN INSURED is amended to include:

Any person or organization for whom you are performing operations if you and such person or organization have agreed in a written contract or written agreement executed prior to any loss that such person or organization will be added as an additional insured on your policy but only with respect to "bodily injury," "property damage" or "personal and advertising injury" caused, at least in part, by your negligence and with respect to liability resulting from:

1. Your ongoing operations for the additional insured(s), or

2. Acts or omissions of the additional insured(s) in connection with their general supervision of such operations.

¶9 The BITCO umbrella policy insures any organization which qualifies as an insured in any underlying insurance designated on the declarations page. The schedule of underlying insurance on the declarations page includes the BITCO general policy. Therefore, the definition of "insured" in the BITCO general policy applies to the BITCO umbrella policy.

ALTERRA EXCESS LIABILITY POLICY ISSUED TO GLOBAL

¶10 At the time of the fire, Global was also insured by a $5,000,000.00 Commercial Excess Liability Policy issued by Alterra. The Alterra policy defines "insured" as "the Named Insured shown in the declarations and any other person or organization qualifying as an Insured under the 'Underlying Insurance.'" The schedule of underlying insurance on the declarations page lists the BITCO umbrella policy. Therefore, the BITCO general policy supplies the applicable definition of "insured" for the BITCO general policy, the BITCO umbrella policy, and the Alterra policy.

ENGINEERING, PROCUREMENT AND CONSTRUCTION
AGREEMENT BETWEEN JP AND IPS (JP-IPS CONTRACT)

¶11 The JP-IPS Contract provides that any subcontract entered into by IPS is required to incorporate the JP-IPS Contract's terms and conditions and any subcontractor is thereby required to accept its terms and conditions in writing. The JP-IPS Contract requires IPS to name JP as an additional insured, which, in turn, means all subcontractors are required to name JP as an additional insured. The JP-IPS Contract requires IPS and each of its subcontractors to provide commercial general liability coverage of $1,000,000.00 per occurrence and umbrella liability insurance of $10,000,000.00 in excess of primary coverage.

IPS-GLOBAL SUBCONTRACT

¶12 IPS entered into a subcontract with Global for construction services. The IPS-Global Subcontract provides that the IPS-Global Subcontract, including Exhibits A through C and the Principal Contract, constitute the entire Subcontract between the parties. The Principal Contract is the JP-IPS Contract. The IPS-Global Subcontract states that Global and its permitted subcontractors shall carry and maintain during the performance of the work the insurance coverages sets forth on the attached Exhibit C, unless the JP-IPS Contract requires different or greater insurance coverage than the subcontractor, in which case the JP-IPS Contract prevails. Exhibit C states the insurance required shall be endorsed to include IPS and Owner as additional insureds. Owner is defined in IPS-Global Subcontract as JP.

¶13 BITCO and Alterra contend that to add JP as an additional insured, the BITCO policy requires a written contract or agreement between Global and JP that JP will be added as an additional insured. The BITCO policy defines "you" as referring to Global. According to the additional insured endorsement, an entity qualifies as an additional insured only if "you and such person or organization have agreed in a written contract or written agreement . . . that such person or organization will be added as an additional insured on your policy." No such agreement exists between Global and JP. BITCO and Alterra argue the trial court rewrote the policy by relying on the JP-IPS Contract and the IPS-Global Subcontract to satisfy the requirements of the additional insured endorsement. JP is not "such person or organization" with whom Global executed a written contract. The court would have to delete the phrase "and such person or organization," modifying the term to "any person or organization for whom you are performing operations if you and such person or organization have agreed in a written contract or written agreement executed prior to any loss that such person or organization will be added as an additional insured on your policy." The court would also have to rewrite "a written contract or written agreement" to "written contracts or written agreements." BITCO and Alterra contend the policy language requires the agreement to be memorialized in a single writing. BITCO and Alterra also argue they were not parties to the JP-IPS Contract or the IPS-Global Subcontract and, therefore, cannot be bound by their terms.

¶14 An insurance policy is a contract. See Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶ 5, 49 P.3d 703. The Supreme Court of Oklahoma has summarized the well-settled law governing insurance contracts:

Parties may contract for risk coverage and will be bound by policy terms. When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions. The policy is read as a whole, giving the words and terms their ordinary meaning, enforcing each part thereof. This Court may not rewrite an insurance contract to benefit either party. . . . We will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered.

BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co., 2005 OK 65, ¶ 6, 148 P.3d 832 (footnotes omitted).

An insurance policy is a contract, and a contract is to be construed as a whole, giving effect to each of its parts. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. An insurance contract is ambiguous only if it is susceptible to two constructions on its face from the standpoint of a reasonably prudent layperson, not from that of a lawyer. However, this Court will not indulge in forced or constrained interpretations to create and then construe ambiguities in insurance contracts.

Haworth v. Jantzen, 2006 OK 35, ¶ 13, 172 P.3d 193 (footnotes omitted).

¶15 Whether this policy language requires a direct contract between the parties is an issue of first impression in Oklahoma. We hold the BITCO general policy language is unambiguous. While a direct contract between JP and Global would satisfy the additional insured provision, a direct contract is not necessarily required by the plain language of the policy. The ordinary, plain meaning is that JP is an insured if both JP and Global agree, in writing, that JP will be added as an additional insured to Global's policies and the other criteria are satisfied. What is essential is that both parties agree in writing. It is undisputed that in the JP-IPS Contract, JP and IPS agreed all subcontractors would be bound by the terms and conditions of the JP-IPS Contract, which included providing certain insurance coverages and naming JP as an additional insured. It is also undisputed that in the IPS-Global Subcontract, Global fully agreed to the terms and conditions of the JP-IPS Contract and that its policies would be endorsed to include JP as an additional insured. Therefore, we hold JP is an additional insured under the BITCO general policy, BITCO umbrella policy, and Alterra policy.[4]

¶16 The weight of authority from courts in other jurisdictions supports our decision. See First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc., 48 F.Supp.3d 158, 166 (D. Conn. 2014), aff'd, 660 F.App'x 30 (2d Cir. 2016), (holding the agreement could be memorialized in separate contracts without requiring a direct contractual relationship between the parties); Millis Dev. & Constr., Inc. v. America First Lloyd's Ins. Co., 809 F.Supp.2d 616, 626-27 (S.D. Tex. 2011) (holding the policy language does not require a direct contract); Pro Con, Inc. v. Interstate Fire & Cas. Co., 794 F.Supp.2d 242, 252 (D. Me. 2011) (holding the policy language does not require a direct contract); but see Westfield Ins. Co. v. FCL Builders, Inc., 948 N.E.2d 115, 118 (2011) (holding the policy language requires a direct, written agreement between the parties).[5]

¶17 Nothing in the BITCO general policy explicitly requires a direct contractual relationship between JP and Global. To accept BITCO and Alterra's position that a direct contract is required, we would need to rewrite the policy by adding language, such as "between" or "direct" with respect to the written contract or written agreement, or by adding to "have agreed in a written contract or written agreement" the words "with you," "with each other," or "together." See First Mercury, 48 F.Supp.3d at 167; Millis, 809 F.Supp.2d 616, 626-27; Pro Con, 794 F.Supp.2d at 251. Furthermore, we agree with the court's assessment in Pro Con that the policy's "repeated use of the phrase 'such person or organization' does not plainly restrict additional insured status only to those entities that have contracted directly with the named insured." 794 F.Supp.2d at 252. A reasonably prudent layperson, without specialized training in law or insurance, would have no reason to read this language as mandating privity of contract. See id.

¶18 We are also not persuaded by BITCO and Alterra's arguments they are not bound by the terms of the JP-IPS Contract and IPS-Global Subcontract. Under the terms of the insurance policies, contracts to which BITCO and Alterra are parties, BITCO and Alterra agreed to the additional insured endorsement and that they would provide coverage to any person or organization meeting the following criteria: (1) Global is performing operations for such person and organization, and (2) Global and the person or organization have agreed in writing such person or organization will be added as an additional insured. BITCO and Alterra do not control for whom Global performs operations and who Global agrees to add as additional insureds. In this case, the person or organization was JP.

¶19 Next, we consider the Navigators policy. Navigators asserts the same argument that JP is not an additional insured, because there is no direct contract between JP and Wilcrest.

NAVIGATORS EXCESS LIABILITY POLICY ISSUED TO WILCREST

¶20 At the time of the fire, Wilcrest was insured by a $10,000,000.00 Commercial Excess Liability Policy issued by Navigators. The Navigators policy insures any person or organization that is an insured in controlling underlying insurance. The controlling underlying insurance is a $1,000,000.00 per occurrence commercial general liability policy issued by Employers Insurance Company of Wausau (Liberty Mutual).[6] The additional insured endorsement to the Liberty Mutual policy defines "insured" as:

A. Section II - Who Is An Insured is amended to include as an additional insured any person or organization to whom you are obligated by a written agreement to procure additional insured coverage, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or
2. In connection with premises owned by you

provided that:

(a) The "bodily injury", "property damage" or "personal and advertising injury" giving rise to liability occurs subsequent to the execution of the agreement; and

(b) The written agreement is in effect at the time of the "bodily injury", "property damage", "personal injury" or "advertising injury" for which coverage is sought.

IPS-WILCREST SUBCONTRACT

¶21 IPS entered into a Master Subcontractor Services Agreement (IPS-Wilcrest Subcontract) with Wilcrest for engineering and related technical services. The IPS-Wilcrest Subcontract was not specific to the Great Salt Plains Pipeline project. The IPS-Wilcrest Subcontract was executed prior to the JP-IPS Contract and does not incorporate the terms and conditions of the JP-IPS Contract. The IPS-Wilcrest Subcontract obligates Wilcrest to procure certain insurance coverages and states that coverages "shall be endorsed to include IPS and Owner as additional insureds." The IPS-Wilcrest Subcontract does not define "Owner."

¶22 The Navigators policy language is broader than the language in the BITCO general policy. However, our analysis is essentially the same. We find the Navigators policy language is unambiguous. According to the ordinary, plain meaning of the additional insured provision, JP is an additional insured. The IPS-Wilcrest Subcontract, alone, satisfies the requirements of the additional insured endorsement in the Navigators policy. The IPS-Wilcrest Subcontract is a written agreement that obligates Wilcrest to procure additional insured coverages for IPS and the Owner. It is undisputed that the IPS-Wilcrest Subcontract includes Wilcrest's agreement to provide certain services for the pipeline project and that JP owns the pipeline. Therefore, we hold JP is an additional insured under the Navigators policy.

¶23 Navigators argues that even if JP is an additional insured, the professional services and construction operations exclusions found in both the underlying Liberty Mutual policy and the Navigators policy apply. The three endorsements defining professional services in the Liberty Mutual policy provide, in pertinent part:

Exclusion - Designated Professional Services

. . .

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services.

Schedule

Description of Professional Services
ANY AND ALL CONSULTING AND ENGINEERING SERVICES

-and-

Exclusion - Engineers, Architects or Surveyors Professional Liability

. . .

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

b. Supervisory, inspection, architectural or engineering activities.

-and-

Exclusion - Contractors - Professional Liability

. . .

1. This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

b. Providing, or hiring independent professionals to provide, engineering, architectural and surveying services in connection with construction work you perform.

2. Subject to Paragraph 3. below, professional services include:

a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

The professional services exclusion in the Navigators policy provides, in pertinent part:

A. The following is added to SECTION I - COVERAGE,
2. Exclusions:

This insurance does not apply to any liability arising out of the rendering or failure to render any "professional services;"

B. The following is added to SECTION V -
DEFINITIONS:

"Professional services" includes but is not limited to:

. . .

b. preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs, drawings or specifications;

c. engineering, architectural, inspection or surveying services, including related supervisory services[.]

¶24 We find the professional services exclusions do not apply. It is undisputed the allegations in the underlying litigation are that those performing welding services on the pipeline did not follow proper fire safety precautions by measuring the wind speed and using safety aids such as fire blankets. The parties agree Wilcrest was to perform quality assurance related to the welds, specifically inspecting the welds. A professional service arises out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, which is predominantly mental or intellectual, rather than physical or manual. See Mutual Assurance Adm'rs, Inc. v. U.S. Risk Underwriters, Inc., 1999 OK CIV APP 129, ¶ 993 P.2d 795. Inspecting welds is not a professional service. Furthermore, welding, measuring wind speeds, using fire blankets, or supervising these activities, are not professional services.

¶25 Navigators suggests the insurance does not cover any of Wilcrest's activities, all of which may be considered "consulting and engineering activities" and/or supervisory and inspection activities.[7] Rather than adopt this unreasonable result making the policy illusory, we find the limited services provided here do not come within the professional services exclusions.

¶26 Navigators also argues that the construction operations exclusion to the additional insured endorsement in the Liberty Mutual policy applies. The additional insured endorsement provides, in pertinent part:

C. Exclusions

This insurance does not apply to:

1. Any premises or equipment leased to you.

2. Any construction, renovation, demolition or installation operations performed by you or on behalf of you, or those operating on your behalf.

Navigators has not provided any authority supporting the proposition inspecting welds constitutes construction operations and comes within the exclusion. We find the construction services exclusion does not apply.

¶27 Navigators and BITCO both make arguments related to the exhaustion of policy limits. The policy limits are not material as to whether JP is an additional insured and the defendant insurers have a duty to indemnify and defend JP. The policy limits do not prevent summary judgment in this declaratory judgment action.

ANTI-INDEMNITY STATUTE

¶28 Finally, we arrive at the second issue of first impression presented in this appeal. BITCO and Navigators defend the declaratory judgment action by arguing Oklahoma's anti-indemnity statute, 15 O.S. § 221, precludes coverage for JP under the policies as a matter of law. The anti-indemnity statute provides, in pertinent part:

B. Except as provided in subsection C or D of this section, any provision in a construction agreement that requires an entity or that entity's surety or insurer to indemnify, insure, defend or hold harmless another entity against liability for damage arising out of death or bodily injury to persons, or damage to property, which arises out of the negligence or fault of the indemnitee, its agents, representatives, subcontractors, or suppliers, is void and unenforceable as against public policy.

C. The provisions of this section do not affect any provision in a construction agreement that requires an entity or that entity's surety or insurer to indemnify another entity against liability for damage arising out of death or bodily injury to persons, or damage to property, but such indemnification shall not exceed any amounts that are greater than that represented by the degree or percentage of negligence or fault attributable to the indemnitor, its agents, representatives, subcontractors, or suppliers.

D. This section shall not apply to construction bonds nor to contract clauses which require an entity to purchase a project-specific insurance policy, including owners' and contractors' protective liability insurance, project management protective liability insurance, or builder's risk insurance.

E. Any provision, covenant, clause or understanding in a construction agreement that conflicts with the provisions and intent of this section or attempts to circumvent this section by making the agreement subject to the laws of another state, or that requires any litigation, arbitration or other dispute resolution proceeding arising from the agreement to be conducted in another state, is void and unenforceable.

15 O.S.2011 § 221. Oklahoma enacted the anti-indemnity statute in 2006, and this is the first appellate court to examine the statute.

¶29 Most states have some form of anti-indemnity legislation either prohibiting an indemnitor from indemnifying an indemnitee for the indemnitee's sole negligence or prohibiting an indemnitor from indemnifying an indemnitee for any of the indemnitee's own negligence, sole or partial. See Dean B. Thomson & Colin Bruns, Indemnity Wars: Anti-Indemnity Legislation Across the Fifty States, 8 J. Amer. College of Constr. Lawyers, August 2014, at 1. Oklahoma's anti-indemnity statute is the latter, prohibiting both broad and intermediate form indemnity agreements in construction contracts. Id. In Oklahoma, "an indemnitor can be required to indemnify the indemnitee only to the extent of the indemnitor's own negligence. The indemnitor cannot be held responsible for the indemnitee's negligence, no matter the degree." Id. Thomson and Bruns discuss the rationale behind this type of anti-indemnity statute:

These statutes reflect a belief that it is against public policy to require a non-negligent party to be responsible for an act or omission for which it was not at fault because an indemnitee who knows that another party is ultimately responsible for the indemnitee's negligent acts (or omissions) may not act as carefully as it otherwise might if it knows it will be responsible for its own acts.

Id.

¶30 The parties do not dispute that the IPS-Global Subcontract and the IPS-Wilcrest Subcontract are construction contracts within the meaning of Oklahoma's anti-indemnity statue.[8] Here, Global and Wilcrest are the indemnitors, and JP is the indemnitee. The indemnity agreement in the IPS-Global Subcontract provides:

[Global] further agrees to indemnify, defend and hold harmless [JP] from and against any and all claims, liabilities, losses or damages to persons or property [including, without limitation, for attorneys' fees and costs] arising out of or related to (i) negligent or otherwise deficient performance of the Work, and/or (ii) any act of omission of [Global], and/or its employees, agents, subcontractors or representatives, that fails to meet the standard of due care under the circumstances.

The indemnity agreement in the IPS-Wilcrest Subcontract provides, in pertinent part:

[Wilcrest] further agrees to indemnify, defend and hold harmless [JP] from and against any and all claims, liabilities, losses or damages to persons or property including, without limitation, for attorneys' fees and costs arising out of or related to (i) the performance of the Services, and/or (ii) any act of omission of [Wilcrest], and/or its employees, agents, sub-subcontractors or representatives.

Both indemnity agreements comply with § 221(B) of Oklahoma's anti-indemnity statute. Subcontractors Global and Wilcrest agree to indemnify and defend JP for liability arising from Global and Wilcrest's acts and omissions. Global and Wilcrest do not agree to defend and indemnify JP for liability arising from JP's own negligence.

¶31 The plain language of the statute also prohibits contract provisions requiring the indemnitor to insure another entity for liability arising out of the indemnitee's own negligence. See 15 O.S. § 221(B); Thomson & Bruns, supra. This includes agreements that the indemnitor will name the indemnitee as an additional insured in the indemnitor's policy or procure additional insured coverage for the indemnitee.[9]

 

¶32 Global was obligated to name JP as an additional insured, which covers JP for losses arising from Global's fault, not JP's fault. The BITCO policy's additional insured endorsement provides coverage to JP for damages "caused, at least in part, by [Global's] negligence[.]" The insurance does not apply to "'bodily injury' or 'property damage' resulting from any act or omission of [JP] or any of their employees, other than the general supervision of work performed for [JP] by [Global]." The policy does not cover JP against its own negligence. We hold the agreements to name JP as an additional insured in the IPS-Global Subcontract and the BITCO insurance contract do not violate § 221(B) nor do they conflict with the provisions and intent of Oklahoma's anti-indemnity statute. See 15 O.S. § 221(E).

¶33 Wilcrest was obligated to name JP as an additional insured, which covers JP for losses arising from Wilcrest's fault, not JP's fault. The Navigators coverage does not apply if the controlling underlying insurance does not apply. The Liberty Mutual policy's additional insured endorsement provides coverage to JP for damages "caused, in whole or in part, by [Wilcrest's] acts or omissions or the acts of those acting on [Wilcrest's] behalf."[10] The policy does not cover JP against liability for its own negligence. We hold the agreements to name JP as an additional insured in the IPS-Wilcrest Subcontract and the Navigators insurance contract do not violate § 221(B) nor do they conflict with the provisions and intent of Oklahoma's anti-indemnity statute. See 15 O.S. § 221(E).

¶34 No provision in the subcontracts and insurance contracts requires Global, Wilcrest, or their respective insurers to indemnify, insure, defend or hold harmless JP against liability for damage to property, which arises out of the negligence or fault of JP. Here, the indemnity agreements and additional insured provisions in the subcontracts and additional insured coverage in the insurance contracts do not violate 15 O.S. § 221 and are valid and enforceable.

¶35 BITCO and Navigators argue the only basis for JP's liability in the underlying litigation is JP's own negligence and, therefore, they do not have a duty to defend JP. BITCO and Navigators contend JP cannot be held vicariously liable for Wilcrest and Global's negligence or fault, because there is no agency relationship between Wilcrest and JP or Global and JP. They also assert that JP cannot be held jointly liable for Wilcrest and Global's negligence, pursuant to 23 O.S. § 15.[11] Navigators contends liability cannot arise out of Wilcrest's negligence, because a jury in one of the nineteen cases in the underlying litigation returned a verdict attributing 0% liability to Wilcrest, and Wilcrest has since been dismissed from all other related cases.

¶36 BITCO and Navigators' argument is misplaced. As discussed above, the anti-indemnity statute prohibits Global and Wilcrest from indemnifying, insuring, and defending JP against liability arising out of JP's own acts and omissions. The indemnity agreements and insurance contracts provide coverage to JP for liability caused, at least in part, by Global and Wilcrest's acts and omissions and do not violate 15 O.S. § 221. One must look to the petitions in the underlying litigation to determine whether the claims arise out of Global and Wilcrest's acts and omissions or JP's acts and omissions. The duty to defend is triggered by the claims made in underlying litigation, not the ultimate outcomes in those cases. See Honeywell v. GADA Builders, Inc., 2012 OK CIV APP 11, ¶ 26 n.11, 271 P.3d 88 (citing First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md., 1996 OK 105, ¶ 13, 928 P.2d 298). If, in the underlying litigation, the plaintiffs alleged JP is vicariously liable for the negligence of Global and Wilcrest, the duty to defend has been triggered. If they allege the harm resulted from JP's own acts and omissions, Wilcrest and Global do not have a duty to defend JP. JP claims vicarious liability is asserted in the underlying litigation. BITCO and Navigators have not submitted any evidence to the contrary.[12] Therefore, we hold BITCO and Navigators owe a duty to defend JP.[13]

 

¶37 We hold JP is entitled to summary judgment. JP is an insured under the terms of the BITCO general policy, the BITCO umbrella policy, the Alterra policy, and the Navigators policy. BITCO, Alterra, and Navigators owe a duty to indemnify and defend JP. The professional services and construction operations exclusions do not apply. The indemnity agreements and additional insured provisions do not violate Oklahoma's anti-indemnity statute.

¶38 AFFIRMED.

MITCHELL, P.J., and SWINTON, J., concur.

FOOTNOTES

[1] Commerce Industry Insurance Company (CIIC) was also named a defendant in this declaratory judgment action. JP dismissed without prejudice its request for a determination of the priority of insurance coverage among the defendant insurers. As a result, CIIC was dismissed as a party.

[2] The trial court denied JP's motion for summary judgment to the extent it sought judgment against Defendant CIIC.

[3] No. 115,285, No. 115,281, and No. 115,293 were consolidated under surviving No. 115,285 by order of the Supreme Court of Oklahoma August 26, 2016.

[4] We note that even if the BITCO general policy requires a direct, written agreement between JP and Global, the IPS-Global Subcontract satisfies this requirement. The JP-IPS Contract required subcontractors to maintain certain insurance coverages and add JP as an additional insured. The IPS-Global Subcontract fully incorporates the terms and conditions of the JP-IPS Contract. JP agreed to the JP-IPS Contract and, by executing the IPS-Global Subcontract, Global also agreed to the JP-IPS Contract.

[5] The policy language in these cases is substantially similar to the the definition of "insured" in the BITCO general policy:

[A]ny person or organization when you and such a person or organization have agreed in writing in a contract, agreement or permit that such person or organization be added as an additional insured on your policy to provide insurance such as afforded under this coverage part.

Millis Dev. & Constr., Inc. v. America First Lloyd's Ins. Co., 809 F.Supp.2d 616, 621 (S.D. Tex. 2011).

Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc., 48 F.Supp.3d 158, 166 (D. Conn. 2014); Pro Con, Inc. v. Interstate Fire & Cas. Co., 794 F.Supp.2d 242, 250 (D. Me. 2011); Westfield Ins. Co. v. FCL Builders, Inc., 948 N.E.2d 115, 116-17 (2011).

[6] Liberty Mutual agreed to defend JP in the underlying litigation and paid its policy limits in settling the underlying claims.

[7] According to the IPS-Wilcrest Subcontract, Wilcrest was to perform certain engineering and related technical services. The scope of services was to be established in task orders from IPS. Task orders included the coordination and supervision of the daily inspection for the pipeline construction and providing welding, utility, and civil-mechanical inspectors.

[8] Title 15, § 221 provides, in pertinent part:

A. For purposes of this section, "construction agreement" means a contract, subcontract, or agreement for construction, alteration, renovation, repair, or maintenance of any building, building site, structure, highway, street, highway bridge, viaduct, water or sewer system, or other works dealing with construction, or for any moving, demolition, excavation, materials, or labor connected with such construction.

15 O.S.2011 § 221(A).

[9] The Oregon Supreme Court held that a similar anti-indemnity statute prohibits not only "direct" indemnity agreements between parties to construction contracts but also "additional insured" agreements by which one party is obligated to procure insurance for losses arising in whole or in part from the other's fault. See Walsh Constr. Co. v. Mutual of Enumclaw, 104 P.3d 1146, 1150 (Or. 2005); Or. Rev. Stat. Ann. § 30.140 (West 2008).

[10] The Liberty Mutual additional insured endorsement also provides:

There is no coverage for the additional insured for "bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence of the additional insured or by those acting on behalf of the additional insured, except as provided below.

If the written agreement to indemnify an additional insured requires that you indemnify the additional insured for its sole negligence, then the coverage for the additional insured shall conform to that agreement; provided, however, that the contractual indemnification language of the agreement is valid under the law of the state where the agreement was formed. If the written agreement provides that a particular state's law will apply, then such provision will be honored.

The Navigators policy does not provide coverage for damages arising out of JP's sole negligence. The indemnity agreement in the IPS-Wilcrest Subcontract does not require Wilcrest to indemnify JP for JP's sole negligence.

[11] Title 23, § 15 provides:

A. In any civil action based on fault and not arising out of contract, the liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the amount of damages allocated to that tortfeasor.

B. This section shall not apply to actions brought by or on behalf of the state.

C. The provisions of this section shall apply to all civil actions based on fault and not arising out of contract that accrue on or after November 1, 2011.

23 O.S.2011 § 15.

[12] The petitions filed in the underlying litigation were not attached to the motions for summary judgment or responses. It was requested that the trial court take judicial notice of the allegations in the petitions, which were also before the trial court.

[13] We note BITCO, Alterra, and Navigators' duty to indemnify JP for damages is limited to the percentage of negligence or fault attributed to Global and Wilcrest. See 15 O.S.2011 § 221(C).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 15, 231 P.3d 706, JONES v. PURCELL INVESTMENTS, LLC
Discussed
 2012 OK CIV APP 11, 271 P.3d 88, HONEYWELL v. GADA BUILDERS, INC.
Discussed
 1999 OK CIV APP 129, 993 P.2d 795, 70 OBJ 3809, Mutual Assurance Administrators, Inc. v. U.S. Risk Underwriters, Inc.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2002 OK 26, 49 P.3d 703, CRANFILL v. AETNA LIFE INS. CO.
Discussed
 2005 OK 65, 148 P.3d 832, BP AMERICA, INC. v. STATE AUTO PROPERTY & CASUALTY INSURANCE CO.
Discussed
 2006 OK 35, 172 P.3d 193, HAWORTH v. JANTZEN
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 2006 OK 100, 151 P.3d 132, MAY v. MID-CENTURY INSURANCE COMPANY
Discussed
 1996 OK 105, 928 P.2d 298, 67 OBJ 2941, First Bank of Turley v. Fidelity and Deposit Insur. Co. of Maryland
Discussed
 2009 OK 20, 206 P.3d 599, WELCH v. CROW
Discussed
 1999 OK 7, 976 P.2d 1043, 70 OBJ 530, Brown v. Alliance Real Estate Group
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 221, Construction Agreement - Insurance and Indemnity - Circumvention Void
Discussed at Length
Title 23. Damages
 Cite
Name
Level

 23 O.S. 15, Several Liability - Civil Action Based on Fault, Not Arising Out of Contract
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA